**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

RUFUS L. WILSON,

                Plaintiff,

                                        Case No. 3:10-cv-892-J-JRK

vs.

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration,

                Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I. Status**

Rufus L. Wilson ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). His alleged inability to work is due to problems with his "[b]ack, neck, head[, and] shoulders," as well as "vertigo, dizziness, [and] constant pain[.]" Transcript of Administrative Proceedings (Doc. No. 14; "Tr." or "record"), at 338; see also Tr. at 2564, 2584. In 2004 or 2005, Plaintiff filed applications for DIB and SSI,[2] alleging an onset disability date in early May 2004 because of injuries sustained as a result of a

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 18), filed January 12, 2011; Order of Reference (Doc. No. 20), entered January 18, 2011.

[2] The exact date of the filings is unclear. Defendant contends, without citation to the record, that Plaintiff filed the applications on September 14, 2004 and October 1, 2004. See Memorandum in Support of the Commissioner's Decision (Doc. No. 30; "Def.'s Mem."), filed March 16, 2012, at 1. The Court has not located the original filings in the record, but references to them in the record would suggest they were either filed near the dates identified by Defendant, see Tr. at 2435 (noting filing dates of September 15, 2004 for SSI and October 1, 2004 for DIB), or on March 31, 2005, see Tr. at 36, 70.

motor vehicle accident occurring during work.³ Tr. at 36, 70, 338, 1971, 2435. Plaintiff's claims were denied initially, Tr. at 100-02, and denied upon reconsideration, Tr. at 95-96, 105-06. On December 5, 2006, a hearing was held before a first Administrative Law Judge ("first ALJ"), during which Plaintiff testified. Tr. at 2385-2409. The first ALJ issued an unfavorable Decision on March 27, 2007. Tr. at 70-79. On November 16, 2007, the Appeals Council granted Plaintiff's request for review, vacated the unfavorable Decision, and remanded the case to "an" ALJ for further review. Tr. at 58-60. In the meantime, on April 16, 2007, Plaintiff filed additional claims for both SSI and DIB. Tr. at 122-26, 136-38; see also Tr. at 60. By the time the Appeals Council entered its remand Order, those additional claims had been denied initially, Tr. at 97-98, 110-12, 113-15, and denied upon reconsideration, Tr. at 99, 117-19, 120-21. In its remand Order, the Appeals Council deemed the subsequent claims "duplicate" and therefore directed that on remand the additional claims be "associated" with the original claims. Tr. at 60.

The claims were consolidated, and on May 5, 2008, a supplemental hearing was held before another ALJ ("second ALJ"). Tr. at 2410-31. On July 17, 2008, the second ALJ issued an unfavorable Decision. Tr. at 16-37. The Appeals Council denied Plaintiff's request for review, Tr. at 7-10, making the second ALJ's Decision the final decision of the Commissioner.

On March 25, 2009, Plaintiff initiated an action in this Court under 42 U.S.C. §§ 405(g) and 1383(c)(3) appealing the Commissioner's final decision. See Complaint (Doc. No. 1), Wilson v. Astrue, No. 3:09-cv-273-J-JRK (M.D. Fla.), filed March 25, 2009. On

---

³ References to the "on the job injury" in the record suggest that the accident and injury occurred on or about May 5, 2004. See, e.g., Tr. at 338. The alleged onset date is on or about the same date. Tr. at 36, 70, 2435.

-2-

December 31, 2009, this Court entered an Opinion and Order reversing the Commissioner's final decision and remanding the matter for further administrative proceedings. Tr. at 2493-2505, 2506. Specifically, the Commissioner was instructed on remand to "1) reevaluate [Plaintiff]'s credibility; 2) reassess the functional limitations associated with Plaintiff's vertigo/dizziness; and 3) conduct any other proceedings deemed appropriate." Tr. at 2505. Upon remand, the Appeals Council entered an Order on January 23, 2010 remanding the matter to an ALJ for further proceedings consistent with this Court's Opinion and Order. Tr. at 2452-53. In its remand Order, the Appeals Council noted that on August 27, 2008, Plaintiff had filed a third round of applications for SSI and DIB. Tr. at 2453. Those applications had been denied initially, Tr. at 2510-13, and denied upon reconsideration, Tr. at 2515-17. The Appeals Council once again consolidated all claims and directed the ALJ on remand to "associate the claims files and issue a new decision on the consolidated claims." Tr. at 2453.

The second ALJ held another hearing on June 2, 2010, during which Plaintiff and a vocational expert ("VE") testified. Tr. at 2894-2916. On July 30, 2010, the second ALJ issued an unfavorable Decision. Tr. at 2435-2449. From that Decision, Plaintiff now appeals to this Court. See Complaint (Doc. No. 1), filed September 30, 2010.

Plaintiff was fifty-two years old at the time of the 2010 hearing before the second ALJ. Tr. at 2898. Plaintiff completed the tenth grade, and he has not obtained a GED despite attempting several times. Tr. at 2898-99. Plaintiff has past relevant work as a farm worker, a laborer, and a truck driver. Tr. at 155, 169, 314, 368, 385, 2393, 2396, 2415, 2585, 2592, 2899.

Plaintiff raises two issues on appeal: (1) whether the second ALJ's assessment of Plaintiff's alleged somatoform disorder is flawed[4]; and (2) whether the second ALJ "made an improper credibility assessment and violated the Eleventh Circuit's pain standard again[.]" Plaintiff's Memorandum of Law in Opposition to the Commissioner's Decision Denying Plaintiff Disability Insurance Benefits (Doc. No. 26; "Pl.'s Mem."), filed February 14, 2011, at 1 (capitalization, emphasis, and citation omitted). Upon review of the record and the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II. The ALJ's Decision

When determining whether an individual is disabled,[5] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

---

[4] "A 'somatoform disorder' is a mental disorder characterized by physical symptoms that mimic physical disease or injury for which there is no identifiable physical cause." Somogy v. Comm'r of Soc. Sec., 366 F. App'x 56, 61 n.8 (11th Cir. 2010) (unpublished).

[5] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

-4-

Here, the second ALJ followed the five-step sequential inquiry. See Tr. at 2438-49. At step one, the second ALJ determined Plaintiff "has not engaged in substantial gainful activity since May 4, 2004, the alleged onset date." Tr. at 2428 (emphasis and citation omitted). At step two, the second ALJ ascertained Plaintiff suffers from "the following severe impairments: degenerative disc disease, lumbar spine; hypertension; cervicalgia; spinal disorders; sacroiliitis; positional vertigo; ulnar neuropathy; osteoarthritis; carpal tunnel syndrome; nicotine dependence; history of alcohol and cocaine dependence; and a history of marijuana use; chronic obstructive pulmonary disorder." Tr. at 2439 (emphasis and citation omitted). After making the "severe" findings, the second ALJ specifically referenced a litany of other "non-severe impairments," as well as "medically determinable mental impairments of dependent personality traits and somatic complaints[.]" Tr. at 2439. Regarding the two mental impairments, the second ALJ found they "do not cause more than minimal limitation in [Plaintiff]'s ability to perform basic mental work activities and are therefore nonsevere." Tr. at 2439. The second ALJ then found at step three that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 2440 (emphasis and citation omitted). The second ALJ determined Plaintiff has the following residual functional capacity ("RFC"):

> [T]o perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [Plaintiff] is able to lift and carry up to twenty pounds occasionally, ten pounds frequently. [Plaintiff] is able to sit for up to seven hours in an eight-hour day, one hour at a time. [Plaintiff] is able to stand or walk for up to four hours in an eight-hour day, thirty minutes at a time. [Plaintiff] may occasionally bend, stoop, climb stairs, kneel or crouch. [Plaintiff] may not crawl or climb ladders, ropes and scaffolds, work around moving or hazardous machinery, work around unprotected heights, or driving motor vehicles. [Plaintiff] may

> occasionally reach above shoulder level, but may do no repetitive pushing or pulling with either hand.

Tr. at 2440-41. Then, at step four, the second ALJ determined Plaintiff "is unable to perform any past relevant work." Tr. at 2447 (emphasis and citation omitted). Finally, at step five, after "[c]onsidering [Plaintiff's] age, education, work experience, and" RFC, the second ALJ indicated "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 2448 (emphasis and citation omitted), including "ticket taker," "shipping receiver weigher," and "labeler," Tr. at 2449. Therefore, the second ALJ concluded Plaintiff was not disabled from the alleged onset date through the date of the Decision. Tr. at 2449.

## III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143,

1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

As previously stated, Plaintiff raises two issues on appeal. The first, which does not appear to have been raised at any time prior to this appeal,[6] is whether the second ALJ correctly assessed Plaintiff's alleged somatoform disorder. Pl.'s Mem. at 1, 23-26. The second issue is whether the second ALJ properly evaluated Plaintiff's credibility. Id. at 1, 26-29. Each is addressed in turn.

### A. Plaintiff's Alleged Somatoform Disorder

Plaintiff contends that his "somatoform disorder explains any divergence between the objective medical findings and his experiencing chronic pain," Pl.'s Mem. at 26, but the second ALJ "defin[ed] Plaintiff['s] mental health issues out of existence," id. at 25. Within the argument about the alleged somatoform disorder, Plaintiff does not cite one page in the almost-3000 page record that would support the contention that he even suffers from such a disorder. In fact, the only instance in the record the Court has found in which the possibility of a "somatoform disorder" is discussed is in a "Psychiatric Review Technique" form filled out by an apparent non-examining psychologist, Edmund Bartlett, Ph.D. See Tr.

---

[6] Defendant does not raise any challenge regarding waiver of this argument, Def.'s Mem. at 12-16, so the undersigned assumes it is properly raised.

-7-

at 2197-2210.[7] In the form, Dr. Bartlett indicated that none of Plaintiff's alleged mental impairments were severe. Tr. at 2197. In arriving at that "[m]edical [d]isposition," Dr. Bartlett checked boxes indicating he considered whether Plaintiff suffered from "[s]omatoform [d]isorders" and/or "[s]ubstance [a]ddiction [d]isorders[.]" Tr. at 2197. Dr. Bartlett indicated, without elaboration, that Plaintiff had "somatic complaints[.]" Tr. at 2203. As a result of both the mental impairments, Dr. Bartlett opined Plaintiff was mildly limited in the areas of activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. Tr. at 2207. Dr. Bartlett opined Plaintiff had no episodes of decompensation of extended duration. Tr. at 2207.

Despite the sparse existence of any evidence in the record that Plaintiff actually suffers from somatoform disorder, the second ALJ gave Plaintiff the benefit of the doubt and specifically noted in the Decision that Plaintiff had "somatic complaints[.]" Tr. at 2439. Contrary to Plaintiff's contention otherwise, see Pl.'s Mem. at 25, the second ALJ considered the somatic complaints and other mental issues, and he determined that the mental impairments "do not cause more than minimal limitation in [Plaintiff]'s ability to perform basic mental work activities and are therefore nonsevere," Tr. at 2439. Additionally, the second ALJ found, just as Dr. Bartlett found, that Plaintiff had mild limitations in the areas of activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. Tr. at 2439-40. Finally, once again concurring with Dr. Bartlett, the second ALJ found there were no episodes of decompensation of extended duration. Tr. at 2440.

---

[7] Plaintiff does mention this Psychiatric Review Technique form in his recitation of the facts. Pl.'s Mem. at 22.

The second ALJ specifically addressed the alleged somatoform disorder from which Plaintiff suffers, and he did so using the proper standards. Substantial evidence supports the second ALJ's findings that the somatoform disorder is not severe, that it does not cause more than mild limitations in the areas of functioning, and that Plaintiff has not suffered any extended episodes of decompensation. Therefore, the undersigned finds no error in this regard.

### B. Plaintiff's Credibility

Plaintiff next argues that the second ALJ "violate[d] the Eleventh Circuit's pain standard" when he found that Plaintiff's testimony regarding the severity of his pain was not entirely credible. Pl.'s Mem. at 26. Plaintiff contends that his "credible testimony is supported by the objective medical evidence of record, i.e., due to [Plaintiff's] combination of chronic pain and vertigo at all relevant times, he has a [RFC] of less than sedentary." Id. at 27.

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.3d at 1223. Although "credibility determinations are the province of the ALJ," Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005), "explicit and adequate reasons" must be articulated if the ALJ discredits the

claimant's testimony. Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (stating that "after considering a claimant's complaints of pain [or other subjective symptoms], the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence").

"When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)); see also 20 C.F.R. § 416.929(c)(3)(i)-(vi) (providing the same). However, a plaintiff's ability to participate in daily activities for a short duration does not preclude a finding of disability. See Lewis, 125 F.3d at 1441 (finding that participation in everyday activities "such as housework and fishing" is insufficient to disqualify "a claimant from disability").

In the Decision, the second ALJ comprehensively summarized Plaintiff's 2008 hearing testimony and his 2010 hearing testimony. Tr. at 2441-42. The second ALJ recognized Plaintiff's contentions that his pain medication makes him drowsy, that his low back pain has gotten "a little" worse with time, and that he has constant pain in his shoulders and neck. Tr. at 2441-42. With respect to Plaintiff's vertigo, the second ALJ summarized Plaintiff's testimony as follows:

> [Plaintiff] said some days he is lightheaded, other days he is alright, but some days he has real bad spinning. He said he has experienced lightheadedness every day for a month in the past. He said he has had bad spinning that when it comes all the way on, everything in the room is spinning. He said it could come on at anytime, but could not indicate how often the really bad episodes

> occur. He said his last bad episode was in February 2010 and it lasted for ten to fifteen minutes and [he] was then light headed. He said he has had three of them back to back in the past. Then he had to lay down for a while. [Plaintiff] said he gets sharp pains in the left side of his head for a minute or so and then he will have a dizzy spell in a couple of days. [Plaintiff] testified that he was having attacks about once per week over the last four months. The record shows that on August 23, 2008, [Plaintiff] was reporting sharp headaches on the right side. He said he goes to the VA hospital for treatment. . . .

Tr. at 2442; see Tr. at 2901-03. The second ALJ also summarized a form filled out by Plaintiff's friend, Venus George, in which it was "reported that [Plaintiff] drives on occasion, watches TV, socializes daily, that he can lift about 20 pounds, walk a few blocks and stand for five minutes and is scared of dizzy spells." Tr. at 2442 (citation omitted); see Tr. at 361-67. Additionally, the second ALJ stated that Plaintiff "reported in May of 2007 that he exercises by walking in the morning and afternoon, drives when necessary and that he suffers from vertigo daily." Tr. at 2442 (citation omitted); see Tr. at 353-60.

After summarizing Plaintiff's testimony and other reports concerning the effects of his impairments, the second ALJ concluded Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC] assessment." Tr. at 2443. The second ALJ gave numerous reasons for determining that Plaintiff's statements are not entirely credible with respect to his vertigo and with respect to his other pain primarily in his back and neck. Tr. at 2443-47.

Regarding Plaintiff's vertigo and its effects, the second ALJ stated that "[t]here are indications in the record that [Plaintiff]'s positional vertigo is intermittent, and can be controlled 80-90% of the time by the use [of] techniques that [Plaintiff] has been taught and

has been able to apply." Tr. at 2443. The second ALJ observed that "the frequency and severity of [Plaintiff's] vertigo as reported to the VA reveals that the attacks occur less often and affect him less than he has alleged at [the] hearing or elsewhere in reports." Tr. at 2444 (citations omitted). The second ALJ later recognized that "the vertigo episodes may[ ]be more frequent now," but he indicated that Plaintiff "has been taught to, and knows how to manage them. Due to their positional nature, [Plaintiff] has some control over their onset as he demonstrated to the neurologists." Tr. at 2447. The second ALJ then indicated that the assigned RFC "accommodates th[e] vertigo by [imposing] restrictions to minimize danger in the event of an episode, although this is something that [Plaintiff] has worked with for many years." Tr. at 2447.

The second ALJ accurately pointed out that the most recent medical records indicate that the vertigo spells are happening with more frequency. See, e.g., Tr. at 2680, 2790-91, 2803. Despite the more frequent occurrences, the record supports the reasons given by the second ALJ for finding that Plaintiff's testimony was not entirely credible. See, e.g., Tr. at 466, 470, 511-12, 547-48, 580, 1060, 1101, 1278, 2255, 2259.[8] The record does contain some later reports by Plaintiff that he was too dizzy to perform the techniques that would relieve the symptoms, see, e.g., Tr. at 2757, but those reports are sparse. The second ALJ was also correct in his observation that Plaintiff apparently managed to work despite the vertigo prior to 2004 (when he allegedly became unable to work), although the record is clear that Plaintiff reported to treating physicians that the vertigo episodes became more severe following the 2004 accident. Tr. at 466, 641, 1060.

---

[8] Most of the cited medical records are from various Veteran's Administration Clinics and Facilities. Some of these medical records are duplicated multiple times in the administrative record. The undersigned only cites to one of each duplicate.

Regarding Plaintiff's other pain, the second ALJ indicated that Plaintiff "has been treated with multiple modalities of conservative treatment for his spine and hip problems, with steroid injections being the most aggressive form of treatment. Overall, [Plaintiff]'s spinal MRI's and imagery reveal mild findings that are not consistent with the severity he alleges." Tr. at 2446 (referring to Tr. at 1179-2196, 2254-61, 2276-2379, 2651-2893). There are very few references to hip issues in the medical records cited by the second ALJ. See Tr. at 2326, 2724. It appears from the context of the quoted sentences and the medical records cited by the second ALJ in support of these sentences that he was actually intending to refer to Plaintiff's spine and neck problems. A review of the medical records cited by the second ALJ indicates that these reasons are supported by substantial evidence.

The second ALJ also gave reasons for discrediting Plaintiff's testimony in general, including, inter alia, that Plaintiff's daily activities at the Veteran's Administration and his attendance of GED courses show "that he has abilities that are far greater than his testimony would indicate," Tr. at 2447, reasons that are also supported by substantial evidence in the record. Specifically, the Veteran's Administration reported Plaintiff attended several field trips and other outside activities, see, e.g., Tr. at 765, 770, 1034, and Plaintiff himself testified that he was able to attend cooking courses at the Veteran's Administration, see Tr. at 2910, as well as GED courses daily for five to six months for about one half of each day, see Tr. at 2446, 2909-10.

The Court recognizes that Plaintiff suffers from a number of impairments and the treatment for some of those impairments has been only moderately successful. Given the controlling standard of review, however, the second ALJ's Decision must be affirmed if supported by substantial evidence. Crawford, 363 F.3d at 1158-59. The undersigned finds

the second ALJ properly considered the relevant factors in determining Plaintiff's statements were not fully credible, see Davis, 287 F. App'x at 748, and on the whole, the reasons given for not fully crediting Plaintiff are supported by substantial evidence. Therefore, the undersigned finds no error regarding the second ALJ's credibility determination of Plaintiff.[9]

## V. Conclusion

After a thorough review of the record, the undersigned is convinced the Commissioner's final decision is supported by substantial evidence. In accordance with the foregoing, it is hereby

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and pursuant to § 1383(c)(3) **AFFIRMING** the Commissioner's decision.

2. The Clerk of Court is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on March 30, 2012.

_____
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record

---

[9] Plaintiff at one point in his Memorandum suggests that the second ALJ ignored a previous finding by this Court that a stated reason for discrediting Plaintiff was not justified. Pl.'s Mem. at 28 n.13. In reciting Plaintiff's testimony in the most recent Decision, the second ALJ stated, "[w]hile [Plaintiff] reports the [2004] accident occurred at work, the records do not indicate that [Plaintiff] pursued worker's compensation." Tr. at 2441. This Court previously found that discrediting Plaintiff's testimony on that basis was unjustified, because Plaintiff "clearly testified [at a 2006 hearing that] his employer 'didn't have workers' comp.'" Tr. at 2502 (citation omitted). In the most recent Decision, the second ALJ again failed to mention the testimony that the employer did not carry workers' compensation, but he did not use the fact that Plaintiff did not pursue workers' compensation as a basis for discrediting his testimony. Tr. at 2441.

-14-